OPINION
{¶ 1} Defendant-appellant Amy Barber appeals the decision of the Columbiana County Domestic Relations Court, which allocated parental rights and responsibilities over the parties' child to plaintiff-appellee Brett Barber. Appellant argues that the court's decision on stability was not supported by the record, and she contends that the court failed to give sufficient weight to the bond between the child and his younger half-sibling. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} The parties were married in October 1999. They lived in East Liverpool, Ohio. One child was born of the marriage in April 2000. Brett worked full-time, and Amy went to school full-time and worked part-time. The child was put in daycare two to three days a week and was watched by his paternal great-grandparents two to three days per week.
 {¶ 3} Amy obtained an Associate's Degree in accounting and subsequently enlisted in the United States Army. As a result, the family relocated to Fort Polk, Louisiana in late 2002. Upon relocation, Brett did not seek work outside the home so that he could stay at home with the child.
 {¶ 4} In March 2003, Amy was deployed on active duty to Kuwait and then Iraq. She got pregnant while overseas. When Brett was advised of this affair and pregnancy, he left Fort Polk with their child and moved back to Columbiana County. First, he and the child lived with his parents. Then, they moved into an apartment. Finally, they moved into the prior marital residence, which had just been vacated by tenants.
 {¶ 5} In August 2003, Brett filed for divorce. He was granted temporary custody. Amy was honorably discharged due to her pregnancy. She moved in with her mother in Amherst, Ohio. Her child was born in February 2004. Amy became engaged to her new child's father, who moved back to Kentucky after completing his own military service.
 {¶ 6} The final divorce hearing took place in December 2004. The magistrate allocated parental rights and responsibilities to Brett in a February 17, 2005 decision. Amy filed objections, alleging that the magistrate's concern that she may relocate to Kentucky is unfounded and claiming the right to raise other objections after the transcript was filed. At oral arguments before the trial court, Amy added that the magistrate failed to fully consider the effect of custody on the bond between the child and his half-sister.
 {¶ 7} On July 8, 2005, the trial court overruled Amy's objections and adopted the magistrate's decision. The court held that the fear of relocation to Kentucky was just one aspect of the finding that the child's life would be more stable with Brett. And, the court noted that no one factor, whether it be intent to relocate or a bond with a half-sibling, is dispositive. The court concluded that there was evidence to support the magistrate's conclusions. Thus, Brett was granted custody. Amy filed timely notice of appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 8} Amy's first assignment of error contends:
 {¶ 9} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN THE DETERMINATION OF PARENTAL RIGHTS AND RESPONSIBILITIES IN THAT THE DECISION OF THE TRIAL COURT WAS BASED, IN PART, ON FACTS THAT WERE NOT IN EVIDENCE AND AS A RESULT, THE DECISION OF THE TRIAL COURT WAS CONTRARY TO LAW."
 {¶ 10} Amy complains that the magistrate's concern that she may move to Kentucky and thus that her life was unstable is not supported by the record. She claims that it is unrebutted that she intends to remain in the Amherst area.
 {¶ 11} R.C. 3109.04(F) sets forth factors to consider in allocating parental rights and responsibilities. But, no one factor is dispositive. Rather, the court has discretion to weigh the relevant factors as it sees fits. And, the listed factors are not exclusive as the court can consider any relevant matters. R.C. 3109.04(F)(1).
 {¶ 12} Here, the court found that the child has many relatives near his current home with Brett, which is a consideration under R.C. 3109.04(F)(1)(c). The court found the mother behind in child support payments, which is a factor under R.C. 3109.04(F)(1)(g). The court considered each parties' wishes as per R.C. 3109.04 (F)(1)(a). As Amy points out, the court also considered whether one of the parents is planning to move out of state as set forth in R.C. 3109.04(F)(1)(j).
 {¶ 13} Amy testified that she has no intent to move to Kentucky. (Tr. 235, 242). However, the guardian ad litem testified that Amy and her fiancée were looking forward to moving in together. (Tr. 27). And, Brett testified that Amy has expressed a desire to live on a horse farm in Kentucky. (Tr. 143). Furthermore, Amy testified that her fiancée, who is the father of her child, lives in Kentucky, recently obtained employment with the Kentucky State Police and will begin training at their police academy in a few months. (Tr. 275). She also noted that the parties' child was recently given his own baby horse, which lives with her fiancée's family in Kentucky. (Tr. 241). This situation could lead a reasonable person to conclude that Amy may end up moving to Kentucky in the near future.
 {¶ 14} Also regarding stability, Brett has a steady job at the same employer where he worked before moving to Fort Polk. On the other hand, Amy has a part-time seasonal job, which she estimated would terminate at the end of January 2006. Although she testified to potential long-term job opportunities, she claims she did not wish to accept or start these positions until after the seasonal employment was over.
 {¶ 15} The guardian ad litem opined that the child should remain with Brett. (Tr. 23). She pointed out a psychological evaluation and noted the distress the child would experience upon a change in the main constants in his life.
 {¶ 16} Finally, the court found that the child is adjusted to his home, his daycare/preschool and his community, a consideration under R.C. 3109.04(F)(1)(d). See, also, Bechtol v.Bechtol (1990) 49 Ohio St.3d 21, 23 (court could consider most recent primary caretaker and desire to avoid disruption of routine). These considerations were all geared toward the plan to maintain stability in the child's life. As the trial court stated, the concern over the possibility of relocation was merely one aspect of the magistrate's findings regarding stability. The child's emotional and psychological need to continue in his current lifestyle was the main concern.
 {¶ 17} The trial court's determination in a custody proceeding is subject to reversal upon a showing of an abuse of discretion. Masters v. Masters (1994), 69 Ohio St.3d 83, 85. An abuse of discretion is more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 18} Moreover, the trial court's discretion in custody cases is accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the parties' lives. Miller v. Miller (1988), 37 Ohio St.3d 71,74. "The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Id.
 {¶ 19} The fact-finder need not take Amy's word on her intent. Issues of credibility and weight of the evidence are primarily the province of the trier of fact. See Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Voice inflection, demeanor and gestures can lead the court to conclude that a witness is not wholly credible or is undecided on a matter for which she claims her intent will not waiver. See id. Considering the facts set forth above, there is cause for concern that Amy may decide to move to Kentucky after being granted custody.
 {¶ 20} In any event, the overriding concern appears to be the desire to keep the four-year-old child attending his same school and daycare, being primarily cared for by the same parent as the past two years and living in the marital residence in a familiar town and neighborhood where many relatives live. The magistrate's conclusion on stability is supported by the record, and any concern over relocation is justified in any case. Even if Amy is given every benefit of doubt, she stands, at best, upon equal footing with the father. Accordingly, the trial court's decision favoring one over the other was a judgment call, which can be set aside by a reviewing court only if is unreasonable, arbitrary, or unconscionable. Even if Amy's contention about a sibling is correct, it is only one of many factors to be considered, none of which is dispositive of the issue. If other factors are in the record supporting the trial court's decision, we will not, and indeed cannot, substitute our collective opinion. Although an award of custody to Amy might have been acceptable, we do not substitute our judgment for that of the trial court since the decision to allocate parental rights and responsibilities to Brett does not appear to be unreasonable, arbitrary or unconscionable. As such, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 21} Amy's second assignment of error alleges:
 {¶ 22} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GIVE PROPER WEIGHT AND CONSIDERATION TO THE RELATIONSHIP BETWEEN THE PARTIES' MINOR CHILD AND THAT MINOR CHILD'S HALF SISTER."
 {¶ 23} Pursuant to R.C. 3109.04(F)(1)(c), one of the best interests factors to consider is "the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest." The magistrate found that both parents have a loving and nurturing relationship with the child. The magistrate stated that the child had a very close relationship with his maternal grandmother in Amherst, Ohio. Then, the magistrate noted that the child had many relatives in his current hometown such as cousins, aunts, uncles, and grandparents.
 {¶ 24} As related to Amy's other child, the magistrate's findings of fact stated that the child's "only sibling is a half sister born February 9, 2004 with whom he has developed a bond." The magistrate's conclusions of law quoted all factors including R.C. 3109.04(F)(1)(c) and reiterated that the subject child of the custody proceeding is a half-sibling to Amy's second child.
 {¶ 25} Amy argues that the magistrate should have engaged in a more detailed analysis of the children's relationship. Amy posits that merely stating a relationship exists is not sufficient consideration of that factor. She notes that the guardian ad litem testified that they have a relationship like brother and sister and the child sees the baby as his. (Tr. 40). She points to the maternal grandmother's testimony that the child is proud to be a brother. (Tr. 184-185). And, she recaps her own testimony that the child has bonded with the baby, he teaches her things, and he is proud. (Tr. 2392-40).
 {¶ 26} First, Amy failed to raise this issue in her written objections. Timely written objections are required. Civ.R. 53(E)(3)(a). Objections shall be specific and state with particularity the grounds of objection. Civ.R. 53(E)(3)(b). A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule. Civ.R. 53(E)(3)(d). A claimed reservation of the right to add more objections at oral argument does not comply with Civ.R. 53.Smith v. Jenkins, 2d Dist. No. 04CA74, 2006-Ohio-581, ¶ 4, 13-14.
 {¶ 27} Nevertheless and contrary to her contention, a decision stating that the four-year-old child developed a bond with his ten-month-old half-sister does more than merely mention that a sibling relationship exists. Explaining that the child "developed a bond" acknowledged that the child has become close to his half-sister during visitation. The magistrate stated that it considered all the factors and specifically pointed out the factor involving the interrelationship and interaction with siblings. An in-depth written analysis of the relationship between a four-year-old and his ten-month-old half-sister whom he generally visits four days a month was not required.
 {¶ 28} As aforementioned, no one factor is dispositive. Although some jurists could reasonably conclude that a bond with a half-sibling should be fostered by giving custody to the parent of that sibling, such conclusion is not required of all jurists. It is clear the magistrate considered the sibling bond but found the need for stability overriding in order to protect the child's best interests. The weight given to the various relevant factors here is not unreasonable, arbitrary or unconscionable. Hence, this assignment of error is overruled.
 {¶ 29} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.